UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRYL LAMONT MAXIE, | ) |
| Petitioner | ) ) ) |
| v. | ) ) Case No. 4:21-cv-01354-AGF |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

# **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Darryl Lamont Maxie's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On August 5, 2020, Petitioner pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). The Court accepted Petitioner's plea, and on November 13, 2020, sentenced Petitioner to 60 months' imprisonment and two years of supervised release.[1]

Petitioner filed the instant pro se motion under § 2255 on or about November 15, 2021. In it, Petitioner raises four grounds as to why the Court should vacate and set aside his conviction. In Ground One, Petitioner argues that he received ineffective assistance of counsel because his appointed counsel failed to seek suppression of Petitioner's confession and statements to law enforcement. In Ground Two, Petitioner argues that he

---

[1] As discussed further below, Petitioner has now been released from prison due to a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and has also been discharged early from his term of supervised release.

1

received ineffective assistance of counsel because his appointed counsel failed to seek suppression of the recovered firearm. In Ground Three, Petitioner alleges "government misconduct" in the form of excessive force by police officers during Petitioner's arrest. Finally, in Ground Four, Petitioner argues that he received ineffective assistance of counsel because his appointed counsel failed to notify him of and challenge a four-point enhancement at sentencing for allegedly using or possessing a firearm in connection with another felony offense (resisting/interfering with arrest and assault, first degree).

As the record conclusively demonstrates that Petitioner is not entitled to relief, the Court will deny Petitioner's § 2255 motion on all grounds and without an evidentiary hearing.

## BACKGROUND

**Criminal Proceedings**

   a. <u>Facts Giving Rise to Indictment</u>

As part of the guilty plea agreement signed by both parties, Petitioner stipulated to the following facts. *United States v. Maxie*, Case No. 4:19-cr-660-AGF, ECF No. 48.[2] On July 17, 2019, members of the St. Louis Metropolitan Police Department ("SLMPD") were investigating an assault at 4427 Labadie. On July 30, 2019, detectives were aware that Petitioner was wanted for that assault and learned of his location in the 2900 block of

---

[2] All further references to the underlying criminal case are designated as "Crim. ECF. No. ___").

Newstead.[3]  When detectives arrived at the scene, they ordered Petitioner to remain seated, but he jumped up and ran.  At some point during the pursuit, Petitioner discarded a loaded Taurus, 94 model, .22 LR caliber semi-automatic pistol.  After being tackled by a police officer, Petitioner tried to gain control of the officer's firearm.  It took several minutes and two officers to subdue Petitioner.

Later that day, while being interviewed by detectives, Petitioner told the officers that the discarded Taurus was the firearm he carried every day.  That same firearm was examined by an expert, who determined that it was manufactured outside of the state of Missouri, and so it must have traveled across state lines either before or during the time Petitioner possessed it.  On the date of the incident detailed above, Petitioner knew he had previously been convicted of a felony.

b. Indictment and Pretrial Proceedings

Petitioner was indicted on August 15, 2019, and charged with one count of unlawfully possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).  Counsel was then appointed, and on January 27, 2020, Petitioner, through counsel, filed a motion to suppress the incriminating statements Petitioner made during the above-noted post-arrest interview with SLMPD Detectives Taylor Hosna and Brandin Neil on July 30, 2019, in which Petitioner connected himself to the firearm in question.  Crim. ECF. No. 37.

---

[3]   As part of the plea agreement, Petitioner was not required to admit whether he was involved in the assault that occurred on July 17, 2019.

In his motion to suppress, Petitioner argued that during the interview, Detective Hosna advised Petitioner of his *Miranda*[4] rights, Petitioner stated that he understood his rights, and then the following exchange took place:

> [W]hen [Detective Hosna] asked [Petitioner] if he wanted to talk to them, [Petitioner] said "No" and shook his head no.
>
> The Detective followed up with a second question: "Not at all?" [Petitioner] again shook his head and stated "No."
>
> Immediately after this exchange, there was a knock on the door of the interview room and Detective Neil stepped out but Detective Hosna remained in the room. After a period of silence, [Petitioner] asked Detective Hosna "What's this consisting of?" The Detective responded, "Hold on, I'll tell you." [Petitioner] said he was confused.
>
> After a further period of silence, the Detective asked [Petitioner] some informational questions – his age, where he worked, how long he worked there, and what kind of work he did. The Detective asked [Petitioner] if it was true that he was "off every Monday and Tuesday" and worked "every weekend," which [Petitioner] confirmed.
>
> Thereafter, [Petitioner] did not speak at all until Detective Neil re-entered the room and asked "What are we doing?" Detective Hosna responded "I don't know" and then turned to [Petitioner] again and said, "You don't want to talk to us…at all?"
>
> At that point [Petitioner] asked again what they wanted to talk to him about and Detective Hosna described the information they had regarding the assault for which he was wanted. For the next seven to ten minutes the Detectives questioned [Petitioner] regarding the assault allegations and he denied knowledge of or involvement in the assault.
>
> However, Detective Hosna continued the interrogation and introduced the topic of the weapon that [Petitioner] allegedly discarded earlier that day. At that point [Petitioner] made incriminating statements connecting himself to the firearm.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

Crim. ECF No. 37 at 2-3.

The government opposed Petitioner's motion to suppress, arguing that even accepting the facts set forth by Petitioner as stated above, Petitioner's motion should be denied because, after invoking his right to remain silence, Petitioner initiated contact with the officers on a matter related to the investigation, thus permitting further interrogation. Crim. ECF No. 38.

Before an evidentiary hearing on the motion was held, Petitioner's counsel withdrew his motion to suppress and waived all pretrial motions.  Crim. ECF. No. 40.  In his motion to withdraw and waiver of pretrial motions, Petitioner's counsel represented that Petitioner agreed with the decision not to raise any issues by way of pretrial motions. *Id*.  The Court accepted the waiver on February 28, 2020, and set a trial date.  Following advice that Petitioner wished to enter a change of plea, the Court set the case for a change-of-plea hearing on August 5, 2020.  Crim. ECF No. 47.

   c. Change of Plea and Pre-Sentencing Filings

As noted above, pursuant to a written plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(A), Petitioner agreed to plead guilty to one count of unlawfully possessing a firearm as a felon in exchange for the government agreeing that it would bring no further prosecution arising out of the events set forth in the indictment. At the change-of-plea hearing held on the day the plea agreement was executed, August 5, 2020, Petitioner made the following sworn statements regarding his counsel's performance:

5

> The Court: And can you tell me, sir, have you had enough time to discuss both your case and this plea agreement with your attorney?
>
> [Petitioner]: Yes, ma'am.
>
> The Court: And are you satisfied with his representation of you in this case?
>
> [Petitioner]: Yes, ma'am.
>
> The Court: Is there anything you think your attorney should have done but hasn't done in representing you?
>
> [Petitioner]: No, ma'am.
>
> The Court: Is there anything you asked him to do that he failed or refused to do?
>
> [Petitioner]: No, ma'am.
>
> The Court: And to the extent that you've had questions, has he answered those questions for you?
>
> [Petitioner]: Yes, ma'am.

Crim. ECF No. 68, Plea Tr. 9:3–18.

Petitioner further confirmed that he understood the terms of the indictment and plea agreement; that he understood the rights he was giving up by pleading guilty, including all of his rights associated with his right to a trial; and that he was guilty of the crime to which he was pleading guilty. *Id*. at 9:19–12:15.

Then, the Court discussed with Petitioner his waiver of pretrial motions:

> The Court: And it's my understanding that at some point in time, your attorney filed a waiver of your right to file pretrial motions?
>
> [Petitioner]: Yes, ma'am.
>
> The Court: Do you recall that, sir?

6

> [Petitioner]: Yes, ma'am.
>
> The Court: Did you, in fact, discuss with your attorney whether or not to waive your right to file pretrial motions?
>
> [Petitioner]: Yes, ma'am.
>
> The Court: Are you satisfied with the decision that you and your attorney reached to waive your right to file those motions?
>
> [Petitioner]: Yes, ma'am.
>
> The Court: And do you understand, sir, that by virtue of that waiver, and also by virtue of entering into a guilty plea, that you could be deemed to have waived or given up your right to assert such motions?
>
> [Petitioner]: Yes, ma'am.
>
> THE COURT: And what this particular paragraph of the plea agreement relates to is your ability to make arguments like that to the Court of Appeals. And so, you understand, for example, sir, to the extent you believe any search, any seizure, any arrest, any statements made by you were obtained in violation of your rights, part of what you're giving up is your right to make those arguments to the Court of Appeals. You understand?
>
> [Petitioner]: Yes, ma'am

*Id*. at 32:25–34:2. The Court ultimately accepted Petitioner's guilty plea as knowing, intelligent, and voluntary. *Id*. at 38:1–8.

On October 27, 2020, Petitioner, through counsel, filed a "Statement of Defendant Regarding Presentence Report." Crim. ECF. No. 56. Petitioner stated that he "accept[ed] the Presentence Report without any legal objection" and clarified that his acceptance of the four points assessed under USSG §2K2.1(b)(6)(B) "[did] not constitute an admission to the allegations giving rise to its applications; rather it represents an effort to conserve

7

judicial resources in light of the relaxed burden of proof that governs sentencing proceedings." *Id*.

Petitioner also filed a sentencing letter, pro se, on October 19, 2020, addressing the above-noted four-point sentencing enhancement relating to his use of a firearm in connection with resisting/interfering with arrest. Crim. ECF No. 54. In the letter, Petitioner laid out his concerns and confusion regarding the enhancement because he pled guilty only to Count One (18 U.S.C. § 922(g)(1)) and was unaware that an enhancement would be sought for a crime to which he did not plead guilty. *Id*. Petitioner argued that he only attempted to flee from the police because they did not identify themselves and arrived at his location in an unmarked van. *Id*. Petitioner concluded by accepting full responsibility for his actions in connection with Count One, stating his desire to move past his previous mistakes, and describing distressing events that have negatively impacted his life. *Id*.

Subsequently, Petitioner, through counsel, requested that the Court grant a downward variance and impose a sentence of 30 months, based on Petitioner's age, his difficult upbringing, and the passage of time since his prior criminal history. Crim. ECF No. 58.

The United States Probation Office filed its final presentence investigation report ("PSR") shortly thereafter. Crim. ECF. No. 61. The PSR concluded that a four-level enhancement was appropriate for Petitioner's use of a firearm in connection with another felony (resisting/interfering with arrest), but a three-level reduction was awarded for "accepting responsibility and timely pleading guilty." *Id*. Based on Petitioner's total

8

offense level, the applicable range under the United States Sentencing Guidelines was 57 to 71 months' imprisonment. *Id*.

  d. Sentencing

On November 13, 2020, the Court held a sentencing hearing at which Petitioner appeared through counsel. Petitioner's counsel represented that Petitioner was not objecting to the four-point enhancement, but also not admitting to those facts. Counsel further confirmed at the hearing that he had reviewed the PSR with Petitioner. Crim. ECF No. 70, Sent. Tr. 6:19–25. Petitioner's counsel also argued for a downward variance based on the points previously described above. *Id*. at 8:21–10:9. The Government opposed the downward variance on the grounds that Petitioner had accrued numerous violations while in custody and that his actions did not warrant a shorter sentence. *Id*. at 12:2–24; *see* Crim. ECF No. 58.

The Court denied Petitioner's request for a downward variance but imposed a sentence of 60 months—near the low end of the applicable range under the United States Sentencing Guidelines—and a two-year term of supervised release. Crim. ECF No. 70, Sent. Tr. at 14:8–10. Petitioner did not file a direct appeal, and the judgment became final on November 27, 2020.

**Motion to Vacate**

As noted above, Petitioner filed his § 2255 motion, pro se, on November 15, 2021. In it, he raises four grounds for federal habeas relief. He argues that counsel was ineffective for withdrawing the above-noted motion to suppress Petitioner's statements to detectives during the July 30, 2019 interview (Ground One), failing to move to suppress

9

the recovered firearm (Ground Two), and failing to notify him of and challenge the four-point sentencing enhancement (Ground Four).  Petitioner also argues that habeas relief is warranted due to government misconduct in that he was "pistol-whipped" and otherwise subjected to excessive force by police officers during his arrest (Ground Three).

The Government filed its response on April 13, 2022, arguing that each of Petitioner's claims is without merit.  ECF No. 22.  Petitioner filed a traverse on July 11, 2022, largely reiterating the bases for each of his claims.  ECF No. 25.

**Compassionate Release and Early Discharge From Supervised Release**

On October 24, 2022, following the close of briefing on the instant § 2255 motion, the Court granted the government's motion to reduce Petitioner's term of imprisonment to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of Petitioner's terminal cancer diagnosis.  Crim. ECF Nos. 72 & 73.  A little over a year later, on December 18, 2023, the Court also approved Petitioner's early discharge from supervised release, on the recommendation of the United States Probation Office based on Petitioner's worsening health and limited life expectancy.[5]  Crim. ECF Nos. 74 & 75.

## DISCUSSION

**Legal Standard**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

---

[5] There is no information in the record or in publicly available resources as to the current status of Petitioner's health.

10

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Section 2255 rights can be waived in a plea agreement if a defendant knowingly and voluntarily makes the "decision to be bound by the provisions of the plea agreement, including the waiver provisions." *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000). However, a petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006) (citation omitted).

To establish ineffective assistance of counsel, "the petitioner must show 'counsel's representation fell below an objective standard of reasonableness' and 'that such deficient performance prejudiced' the defense." *Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Prejudice requires the petitioner to show a "reasonable probability" that the outcome would have been different but for the deficient performance. *Coleman v. United States*, 750 F.3d 734, 739 (8th Cir. 2014) (citation omitted). In the context of a guilty plea, this requires the petitioner to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the sentencing context, it requires the petitioner to show "a reasonable probability that his sentence would have been different but for the deficient performance." *Coleman*, 750 F.3d at 739 (8th Cir. 2014) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome or a substantial, not just conceivable, likelihood of a different result." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044-45 (8th Cir. 2019) (citation omitted).

11

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1045 (citation omitted). "Instead, [j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* In particular, a "defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017) (citation omitted).

1. Ground One: Withdrawing the Motion to Suppress Petitioner's Statements[6]

Petitioner first contends that his counsel was ineffective by failing to seek suppression of Petitioner's statements to police. Petitioner alleges that he was beaten during his arrest and that those same arresting officers later interrogated him, leading to his confession. Plaintiff argues that his will was overborne due to his fear of the officers. As noted above, Petitioner's counsel initially filed a motion to suppress the confession before withdrawing the motion and waiving all pre-trial motions. Petitioner now alleges that counsel was ineffective in advising him to withdraw his motion to suppress.

Petitioner's assertion is contradicted by the record. As noted above, in both the written plea agreement and the extensive plea colloquy held with the Court under oath,

---

[6] As discussed below, Petitioner's release from prison and early discharge from supervised release has mooted his claim challenging the length of his sentence (Ground Four). However, Petitioner's other claims are not moot because those challenge the validity of Petitioner's conviction, which is presumed to have collateral consequences. *See O'Neil v. United States*, 966 F.3d 764, 770 n.4 (8th Cir. 2020) ("O'Neil's ineffective-assistance-of-counsel claims . . . turn on the validity of his conviction, not the validity of his sentence. Therefore, we presume that those claims bore collateral consequence and are not mooted by his release.").

12

Petitioner represented that he discussed withdrawing all pretrial motions with his counsel, agreed with that decision, and understood the consequences of doing so. Petitioner's claim is further contradicted by his representations to the Court during the plea-taking that he was satisfied with his counsel's representation; that there were no questions he had that his counsel had not answered; and that there was nothing he asked his counsel to do that counsel had not done.

In any event, Petitioner is unable to demonstrate prejudice under *Strickland* because a motion to suppress would have been ultimately unsuccessful. He argues that withdrawing the motion to suppress was prejudicial because the interrogating officers violated his *Miranda* rights in obtaining incriminating statements. Petitioner was advised of his rights, and he invoked those rights by remaining silent and refusing to answer questions, but he ultimately relinquished them by reengaging the officers with a question related to the investigation. *See United States v. Hull*, 419 F.3d 762, 768 (8th Cir. 2005) (holding the district court appropriately denied defendant's motion to suppress when he initiated contact with authorities on a matter relating to the investigation); *see also United States v. Thongsophaporn*, 503 F.3d 51, 56 (1st Cir. 2007) (holding that a defendant freely initiated further communications with law enforcement officer by asking "what was going on," notwithstanding his initial statement that he did not wish to answer any questions).[7]

---

[7] Neither did the detectives' clarifying questions as to whether Petitioner was sure he did not want to speak to them, or their informational questions asking about Petitioner's age and work, violate Petitioner's *Miranda* rights. *See, e.g., United States v. LaRoche*, 83 F.4th 682, 689 (8th Cir. 2023), *cert. denied,* 144 S. Ct. 858 (2024)

13

Petitioner also contends that he made the statements to the police because he feared further violence would be used against him. Viewing the totality of the circumstances, the Court disagrees.

> A statement is involuntary when it is extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination. We determine if a defendant's will has been overborne by examining the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. Factors used to make this determination include the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition.

*United States v. Sandell*, 27 F.4th 625, 630 (8th Cir. 2022) (cleaned up). Petitioner argues that his will was overborne because "[a]ny person in a situation such as this, facing officers that had just beat you, would have their will overwhelmed in the hopes of not receiving another beating, and answer any question with anything the police would want to hear." ECF No. 25 at 9. But there is no evidence in the record suggesting the police intended to use or actually did use additional force during questioning. *See United States v. Carroll*, 207 F.3d 465, 472 (8th Cir. 2000) (holding that police officers did not coerce an involuntary confession from the plaintiff because their use of force was limited to effecting the arrest and not employed during the subsequent questioning). Rather, Petitioner acknowledged in his plea agreement, his sentencing letter, and even his current

---

("[F]ollow-up questions to clarify ambiguity do not amount to "interrogation" unless "their point is to enhance the defendant's guilt.") (citation omitted); *United States v. Armstrong*, 39 F.4th 1053, 1056 (8th Cir. 2022) (holding that questions regarding basic identification and employment information was not interrogation under *Miranda*).

14

habeas filings, that he fled from police and force was used to subdue him. The questioning occurred later in the day, and there is no allegation of any use of force or threat of force during the discussion with Petitioner.

Nothing in the record suggests Petitioner lacked the requisite maturity, education, or mental or physical stamina to understand his rights; indeed, his earlier invocation of his right to remain silent reflects his competence and understanding. Further, nothing in the record suggests the police actually used or threatened to use any physical force during the questioning. Finally, Petitioner's time spent discussing substantive topics with the officers lasted only seven to ten minutes; and Petitioner's record shows he has had multiple experiences with the criminal justice system, suggesting he was familiar with his constitutional rights. *See, e.g.*, *Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir. 2004) (deciding that a one-and-a-half hour interview was not excessive in duration); *United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) ("A history of interaction with the criminal justice system supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary.") (citation omitted).

Because the totality of the circumstances weighs against finding that Petitioner's will was overborne, Petitioner's underlying claim is without merit, and he cannot succeed on an ineffective assistance of counsel claim. *See, e.g., Gingras v. Weber,* 543 F.3d 1001, 1003 (8th Cir. 2008) (dismissing petitioner's claim for ineffective assistance of counsel because there was no reasonable probability a motion to suppress would have been successful, as his statements were not a product of intimidation, coercion, or

deception, nor was petitioner subjected to coercive police activity sufficient to demonstrate his confession was made involuntarily). Further, Petitioner received benefits as the result of his negotiated plea, including the agreement not to pursue the July 17, 2019 assault.

For these reasons, the Court will deny Ground One.

2. Ground Two: Failure to File Motion to Suppress the Firearm

Petitioner claims his counsel was ineffective in failing to seek suppression of the firearm recovered by the police. Again, Petitioner's sworn statements that he was satisfied with his attorney's performance, that his attorney did everything Petitioner asked him to do, that there was nothing that Petitioner could think of that his attorney should have done but did not do, and that he specifically agreed to waive any pretrial motions while understanding the consequences for doing so, all plainly contradict his claim in Ground Two.

Further, Petitioner cannot demonstrate prejudice because, again, any motion to suppress the firearm would have been without merit. Petitioner contends that the firearm was only linked to him by the statements he made during the interrogation which he alleges was coercive. However, as discussed above, the Court has determined Petitioner was not coerced into making any incriminating statements and that detectives did not violate Petitioner's *Miranda* rights.

In any event, Petitioner's statements during the interview with detectives was not the only evidence linking Petitioner to the firearm. Petitioner's own evidence—including the arrest report attached to his motion to vacate—indicate that Petitioner was linked to

the firearm by the anticipated testimony of multiple police officers who reported that they observed Petitioner produce a gun from his waistband or pocket and drop the gun in the alley prior to his arrest.  ECF No. 1 at 15–16.  In his reply brief, Petitioner argues that this other evidence connecting him to the firearm was substantially weaker than his confession because of, for example, discrepancies in the officers' description of the gun they saw and the lack of DNA or other physical evidence linking Petitioner to the gun. ECF No. 25 at 8–10.  But regardless of Petitioner's view of how strong the other evidence was, there is no question that Petitioner's confession was not the only evidence linking Petitioner to the firearm.  More importantly, Petitioner alleged no Fourth Amendment violation in recovering the firearm.  To the contrary, the undisputed facts are that the officers ordered Petitioner to remain seated but he fled and discarded the firearm during flight.  The seizure of the discarded firearm provides no basis for suppression.

In short, Petitioner has not established prejudice under *Strickland* because a motion to suppress the firearm would likely have been denied; the government had other evidence to link Petitioner to the firearm; and there is no reasonable probability the outcome would have been different had he not waived his right to file a motion to suppress.  *See Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014) ("Counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile.") (citations omitted).  For all of these reasons, the Court will deny Ground Two.

17

3. <u>Ground Three: Government Misconduct</u>

Petitioner claims that habeas relief is warranted due to government misconduct, namely, police brutality to which he was subjected during his arrest. To the extent this claim relates to Petitioner's claim in Grounds One and Two—in other words, to the extent Petitioner is arguing that alleged police brutality rendered his later confession coercive and that counsel was ineffective for failing to make such an argument—the Court rejects that claim for the reasons stated above.

To the extent that Petitioner is asserting an independent claim based solely on the force used during his arrest, a § 2255 motion is not the appropriate vehicle to bring such a claim.[8] *See Houser v. United States*, 508 F.2d 509, 514–15 (8th Cir. 1974) ("Claims of illegal arrest [and] irregularities in arrest . . . are not cognizable" under § 2255) (footnotes omitted). Further, pursuant to Petitioner's plea agreement, he waived the right to contest any issue other than prosecutorial misconduct and ineffective assistance of counsel. Thus, the Court will deny Ground Three.

---

[8] Petitioner states that he has separately filed a civil lawsuit in state court seeking damages for the alleged police brutality, and he has submitted to the Court what appears to be an unsigned, unstamped copy of his complaint directed to the state court. *See* ECF No. 19. Such a civil lawsuit may well be a more appropriate vehicle to seek relief for the type of excessive force that Petitioner alleges. However, the Court notes that it has not located any record of such a lawsuit in Missouri's Case.net electronic filing system.

4. <u>Ground Four: Failure to Challenge and Notify of Sentencing Enhancement</u>

With respect to Ground Four, Petitioner argues his counsel was ineffective for failing to notify him of and challenge his four-point sentencing enhancement. The Court will deny Ground Four as it is moot.[9]

Petitioner's Ground Four only challenges the length of his prison term. However, Petitioner was granted early compassionate release on October 24, 2022, and his supervised release ended on December 18, 2023. Crim. ECF No. 75. As Petitioner is no longer in prison or on supervised release, there is no effectual remedy the Court can grant. *Irvan v. United States*, No. 24-1402, 2024 WL 5199386, at *1 (8th Cir. Dec. 23, 2024) (concluding defendant's claim relating to his prison term was mooted by his release from prison while his § 2255 case was pending); *Owen v. United States*, 930 F.3d 989, 990–91 (8th Cir. 2019) (concluding that defendant's appeal challenging the length of his completed prison sentence was moot).

**Evidentiary Hearing**

As noted above, an evidentiary hearing is not warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (holding that a district court may forego an evidentiary hearing before

---

[9] Because the Court will deny Ground Four as moot, it need not consider and has not considered the additional evidence both parties cite with respect to the merits of Ground Four—namely, the surveillance video depicting the events in which Petitioner was alleged to have resisted arrest.

19

dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief") (citation omitted).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Darryl Lamont Maxie's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2025.